**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| IN RE: DIISOCYANATES ANTITRUST LITIGATION | MDL DOCKET NO. 2862 |
|---|---|

**INTERESTED PARTY RESPONSE OF PLAINTIFF EMMA CHEMICALS CO., INC. IN OPPOSITION TO TRANSFER OF RELATED ACTIONS TO THE WESTERN DISTRICT OF PENNSYLVANIA FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS, AND IN SUPPORT OF TRANSFER OF RELATED ACTIONS TO THE EASTERN DISTRICT OF PENNSYLVANIA FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

**I.      INTRODUCTION**

Emma Chemicals Co., Inc. ("Emma Chemicals"), plaintiff in related action *Emma Chemicals Co., Inc. v. BASF SE, et al.*, No. 2:18-cv-02958-GJP (E.D. Pa.), respectfully submits this response in opposition to the motion of Utah Foam Products, Inc. ("Utah Foam") for centralization in the Western District of Pennsylvania. Emma Chemicals concurs in Utah Foam's motion to the extent that it seeks centralization of the pending actions. But the Eastern District of Pennsylvania is the most appropriate venue for such centralization.

Emma Chemicals was the first plaintiff to file an action in the Eastern District of Pennsylvania alleging a conspiracy to fix the prices of Diisocyanates, in particular, methylene diphenyl diisocyanate ("MDI") and toluene diisocyanate ("TDI"). The American subsidiary of the world's largest MDI manufacturer and third-largest TDI manufacturer maintains its principal place of business in that district. The Eastern District of Pennsylvania has exceptional experience and maintains long-standing expertise necessary to properly manage what is certain to be a complex matter, in which plaintiffs have collectively named over 20 defendants. The case is assigned to Judge Gerald Pappert, whose private practice encompassed oversight of similar litigation prior to his taking the bench, and who has handled other complex litigation since taking the bench. Pretrial coordination in the Eastern District of Pennsylvania will promote the just and efficient conduct of

the underlying actions, and result in greater convenience for the parties and witnesses.

## II.        FACTUAL BACKGROUND

The four pending related actions all arise out of the same conspiracy to violate federal antitrust laws by manufacturers and sellers of MDI and TDI. Defendants are eight parent companies with global operations in the relevant product markets—Bayer AG, BASF SE, Covestro AG, DowDupont, Inc., Huntsman International LLC, Lanxess AG, Mitsui Chemicals, Inc., and Wanhua Chemical Group Co., Ltd.—along with several of their respective subsidiaries (collectively, "Defendants").

All four pending antitrust class complaints allege a conspiracy to fix, raise, maintain and/or stabilize prices for MDI and TDI products sold in the United States. MDI and TDI are precursor ingredients for the manufacture of polyurethane foams and thermoplastic polyurethanes. Flexible polyurethane foam is used in products such as mattresses, upholstered furniture, and car seats. Rigid polyurethane foam is used mostly as an efficient insulating material for buildings and refrigeration appliances. Thermoplastic polyurethanes are used in diverse product groups such as clothing, mobile electronic devices, and sports equipment.

## III.       ARGUMENT

### A.        Formation of a Multidistrict Litigation Is Appropriate Because the Related Actions Satisfy the Requirements of 28 U.S.C. § 1407.

The Panel's establishment of a multidistrict litigation ("MDL") proceeding is most appropriate in this instance because "civil actions involving one or more common questions of fact are pending in different districts," and transfer will serve "the convenience of parties and witnesses" and "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Indeed, all four complaints allege the same conspiracy and a single count under the Sherman Act, and differ materially only in the identities of the named defendants.

### 1. The Pending Actions Raise Overwhelmingly Common Questions of Fact.

The Panel routinely determines that transfer and coordination or consolidation is warranted when it is presented with overlapping cases seeking damages under the federal antitrust laws for the same type of anticompetitive conduct; these types of cases clearly involve common questions of fact and law. *See In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 999 F. Supp. 2d 1383, 1384 (J.P.M.L. 2014) (common questions of fact and law existed, and thus, transfer of antitrust class actions was appropriate for coordinated pretrial proceedings); *see also In re Generic Drug Pricing Antitrust Litig.*, 227 F. Supp. 3d 1402, 1403 (J.P.M.L. 2016) ("*Generic Drug*") (because plaintiffs asserted "similar claims" as to a wide variety of products under the Sherman Act "on behalf of overlapping putative nationwide classes," centralization in the Eastern District of Pennsylvania was appropriate); *see generally* Federal Judicial Center, Multidistrict Litigation Manual (Fourth), §5:1(2010) ("Antitrust actions present a category of actions that the Panel almost inevitably orders transferred if there are multiple actions pending in different districts.")

These cases present similar factual allegations and involve common questions of law.  Each plaintiff alleges, *inter alia*, a conspiracy among Defendants to fix the prices of MDI and TDI. With a single exception in a single complaint, each complaint names the same corporate families as defendants and alleges that they agreed among themselves to fix the prices of diisocyanates, including by limiting supply through planned manufacturing plant shutdowns. Each complaint also proposes a substantially identical class of direct purchasers of diisocyanates. *See, e.g., In re German Auto. Mfrs. Antitrust Litig.*, 278 F. Supp. 3d 1373, 1374 (J.P.M.L. 2017) (centralization was appropriate where all actions shared common factual allegations of anticompetitive conduct); *In re Fretted Musical Instruments Antitrust Litig.*, 657 F.Supp.2d 1379, 1381 (J.P.M.L. 2009) ("All actions…arise out of the same allegedly infringing conduct and involve common discovery and

other pretrial proceedings. Centralization of all actions in one MDL docket will, therefore, eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary").

### 2. Transfer and Consolidation or Coordination for Pretrial Proceedings Will Promote the Just and Efficient Conduct of the Related Action.

Transfer and consolidation or coordination of the related actions for pretrial proceedings will also "promote the just and efficient conduct of [the] actions" in accordance with the third requirement of § 1407(a). The related actions will likely involve many of the same pretrial issues, particularly including those concerning the nature and scope of discovery. If each district were forced to resolve these issues in separate pretrial proceedings, scarce judicial resources would be needlessly wasted. Moreover, there would be a substantial likelihood that such duplicative proceedings would result in inconsistent rulings, particularly regarding the contours of any class any court may certify.[1] Transfer and consolidation or coordination are necessary to avoid these inefficiencies and inconsistencies, and to promote the just and efficient conduct of related actions.

### 3. Transfer and Consolidation or Coordination for Pretrial Proceedings Will Further the Convenience of Parties and Witnesses.

The Panel has found that the convenience requirement is met when transfer and consolidation or coordination prevent duplicative discovery and inconsistent pretrial rulings. Here, transfer and consolidation or coordination for pretrial proceedings of the related actions will also serve "the convenience of the parties and witnesses" in accordance with the second requirement of

---

[1] *See In re Commodity Exchange Inc., Gold Futures & Options Trading Litig.*, 38 F. Supp. 3d 1395, 1395 (J.P.M.L 2014) ("*Gold*"); *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 598 F. Supp. 2d 1366, 1367 (J.P.M.L. 2009) (consolidation "promote[s] the just and efficient conduct of this litigation"); *In re Commercial Money Ctr., Inc. Equip. Lease Litig.*, 229 F. Supp. 2d 1379, 1380 (J.P.M.L. 2002) (consolidation of cases filed nationwide would prevent inconsistent pretrial rulings).

§ 1407(a). *See Gold*, 38 F. Supp. 3d at 1395 ("Centralization will eliminate duplicative discovery . . . . prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary.").

Transfer and consolidation or coordination will preclude any such issues—it will enable the transferee judge to formulate a unified pretrial program that minimizes the inconvenience and overall expense for all parties and witnesses. *See id.*; *see also In re Lidoderm Antitrust Litig.*, 11 F. Supp. 3d 1344, 1345 (J.P.M.L. 2014) (same); *In re Aluminum Warehousing Antitrust Litig.*, 988 F. Supp. 2d. at 1362, 1364 (J.P.M.L. 2013) (same).

### B.  The Related Actions Should Be Centralized in the Eastern District of Pennsylvania.

The Eastern District of Pennsylvania is the best venue for pretrial centralization of the related actions for each of several reasons. The Eastern District of Pennsylvania: (1) maintains a strong nexus to the allegations; (2) has the judicial resources, experience, and expertise to manage the related actions efficiently; and (3) is convenient for all parties and certain to be the site of substantial discovery.

#### 1.  There is A Strong Nexus Between the Eastern District of Pennsylvania and Plaintiffs' Allegations

The Panel frequently examines the "nexus" between the transferee district and the allegations animating related actions. That nexus is strong as to the Eastern District of Pennsylvania amply because it is the home district of defendant Wanhua Chemical (America) Co. Ltd. ("Wanhua America"), the American subsidiary of Wanhua Chemical Group Co., Ltd. ("Wanhua"), the world's largest MDI manufacturer and seller, and third-largest TDI manufacture and seller. Wanhua America is headquartered in Newtown Square, Pennsylvania, just west of Philadelphia. Wanhua controls 28% of the MDI market and 13% of the TDI market. *See e.g., Generic Drug*, 227

F. Supp. 3d at 1403 (Eastern District of Pennsylvania was an appropriate transfer forum because defendants had "significant business operations in or near" that district); *In re Hydrogen Peroxide Antitrust Litig.*, 374 F. Supp. 2d 1345, 1346 (J.P.M.L. 2005) (a nexus existed because of the "presence of two of the largest domestic producers of hydrogen peroxide—both of which are named as defendants—within blocks of the federal courthouse" in the district); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 398 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005) (transferee district was appropriate because defendants' facilities "involved in the development and manufacturing of the relevant devices").

For other domestic Defendants, Philadelphia is particularly convenient for BASF Corp. (headquartered in Florham Park, New Jersey), Bayer Corp. (Whippany, NJ), Mitsui America (Rye Brook, NY), and MCNS USA (Covington, GA). As to foreign Defendants, Philadelphia is home to one of the United States' largest international airports. *See infra*. Likewise, key industry trade associations through which the conspiracy may have implemented in part are nearby. The Polyisocyanurate Insulation Manufacturers Association, of which several Defendants are members is in Arlington, Virginia (just outside of Washington, DC). The American Chemistry Council ("ACC") is headquartered in Washington, D.C.; its DII Panel (of which certain domestic Defendants are members) is also based there.

### 2. The Eastern District of Pennsylvania Has the Judicial Resources, Experience, and Expertise to Manage the Related Actions Efficiently.

Another determining factor in determining where to consolidate an MDL proceeding is the experience of a potential transferee forum in managing multidistrict litigation. *See, e.g., In re Puerto Rican Cabotage Antitrust Litig.*, 571 F. Supp. 2d 1378, 1378 (J.P.M.L. 2008). The Eastern District of Pennsylvania maintains a long-established record of innovation in the management of complex litigation. Its reputation is such that, in a case where no district emerged as the clear nexus

for centralized proceedings, the Panel cited that record, and the district's ability to assume the responsibility of such a massive undertaking. *In re Asbestos Products Liability Litig*., 771 F.Supp 415, 422-23 (J.P.M.L. 1991) [2]; *see also In re Processed Egg Prod. Antitrust Litig*, 588 F.Supp.2d. 1366, 1368 (J.P.M.L. 2008)(where either the District of Minnesota or Eastern District of Pennsylvania would have been appropriate transferee courts, this Court selected the Eastern District of Pennsylvania). The expertise of the Eastern District of Pennsylvania in organizing massive MDL proceedings was likewise recognized in *Dabon v. GlaxoSmith Kline, Inc. (In re Avandia Mktg.)*, where the Panel assigned the case to the Eastern District of Pennsylvania despite the lack of pending actions in the district. *Dabon v. GlaxoSmith Kline, Inc. (In re. Avandia Mktg.)*, 528 F.Supp.2d. 1339, 1340 (J.P.M.L. 2007).

The Panel has also acknowledged the Eastern District of Pennsylvania's extensive experience in presiding over antitrust litigation in particular. *See In re Blood Reagents Antitrust Litig*., 652 F. Supp. 2d. 1373, 1374 (J.P.M.L. 2009). In fact, of the twelve current MDL cases proceeding in the Eastern District of Pennsylvania, seven encompass antitrust claims. *See In re Domestic Drywall Antitrust Litig.*, MDL 2437; *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig*., MDL 2034; *In re Blood Reagents Antitrust Litig*., MDL 2081; *In re Niaspan Antitrust Litig.,* MDL 2460; *In re. Suboxone Antitrust Litig.*, MDL 2445; *In re Processed Egg Products Antitrust Litig*., MDL 2002; *In re Generic Pharm. Pricing Antitrust Litig*., MDL 2724.[3]

Docket conditions likewise favor transfer to the Eastern District of Pennsylvania. *See In re*

---

[2] Currently *In re Asbestos Products Liability Litig. (No. VI)* is pending in the Eastern District of Pennsylvania. *See In re Asbestos Prod. Liab. Litig*., MDL No. 875, 2012 U.S. Dist. LEXIS 75160 (J.P.M.L. May 30, 2012); *see also* Pending MDLs by District as of July 16, 2018 statistics. *Available at* http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-July-16-2018.pdf (last viewed July 17, 2018).

[3] Most of those proceedings are in their late or final stages and should not substantially burden the court going forward.

*Pressure Sensitive Labelstock Antitrust Litig.*, 290 F. Supp. 2d 1374, 1376 (J.P.M.L. 2003); *In re Asbestos Prods. Liability Litig.*, 170 F.Supp.2d 1348, 1349 (J.P.M.L. 2001) (Panel considers the "docket condition of any specific federal district court" in making pretrial centralization determinations). According to the most recent report, the median time from filing to trial in civil cases is 21.2 months in the Eastern District of Pennsylvania, a figure that is far less than that of any other district in the Third Circuit. The same figure for the Western District of Pennsylvania is 33.5 months.[4]

The Emma Chemicals action has already been assigned to the Honorable Gerald J. Pappert. Immediately prior to his service on the federal bench, Judge Pappert served as general counsel of a company that was routinely a party to complex litigation, including antitrust litigation of a scale exceeding the current scale of this proceeding. In recent years, he has presided over at least two antitrust cases, and another involving alleged unfair trade practices. *See Medical Diagnostic Labs., LLC. v. Independence Blue Cross*, No. 16-cv-5855, 2017 U.S. Dist. LEXIS 140256 (E.D. Pa. Aug 30, 2017), *Simmons v. Simpson House, Inc.*, No. 15-cv-06636, 2017 U.S. Dist. LEXIS 53498 (E.D. Pa. Apr. 7, 2017); *Bilinski v. Wills Eye Hosp.*, No. 16-02728, 2016 U.S. Dist. LEXIS 148121 (E.D. Pa. Oct. 26, 2016). He is eminently qualified to preside over multidistrict litigation for the first time. Conversely, the Utah Foam case has not yet been assigned to any Article III judge.

        3.    **The Eastern District of Pennsylvania is Convenient, Accessible, and Likely to be a Discovery Hub.**

The Eastern District of Pennsylvania is most accessible to parties and witnesses, with ample access by both air and rail.  It is home to, Philadelphia International Airport, which is among the 20 busiest airports in the United States.[5]  Twenty-five airlines, including all major domestic carriers,

---

[4] *See* http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0331.2018.pdf.

[5] Airports Council International, North America, *2015 North American Top 50 Airports* (available

offer nearly 500 daily departures to more than 130 destinations worldwide."[6] It falls along Amtrak's Northeast Corridor, making it as accessible by rail as any city in the nation. Philadelphia's 30th Street Station is the third-busiest Amtrak station in the United States. In 2016, Amtrak recorded a ridership of over four million riders at the station.[7]

## IV. CONCLUSION

For all of the reasons above, Emma Chemicals respectfully requests that the Panel transfer and coordinate or consolidate the related actions in the Eastern District of Pennsylvania.

Dated: July 18, 2018

Respectfully submitted,

/s/ Linda P. Nussbaum
Linda P. Nussbaum
NUSSBAUM LAW GROUP, P.C.
1211 Avenue of the Americas, 40th Floor
New York, NY 10036-8718
(917) 438-9102
lnussbaum@nussbaumpc.com

*Counsel for Plaintiff Emma Chemicals Co., Inc.*

---

at http://www.aci-na.org/sites/default/files/nam2015_top_50.xlsx).

[6] https://www.phl.org/Pages/AboutPHL/AboutPHLDefault.aspx

[7] https://www.amtrak.com/content/dam/projects/dotcom/english/public/documents/corporate/nationalfactsheets/National-Fact-Sheet-FY2016-0717.pdf